SQUIRE PATTON BOGGS (US) LLP
Eric J. Troutman (State Bar # 229263)
eric.troutman@squirepb.com
Jason M. Ingber (State Bar # 318323)
jason.ingber@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Defendant
FIDELITY NATIONAL HOME
WARRANTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN LOYHAYEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL HOME WARRANTY, and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No. 2:19-cv-08431-AB-ADS<br><br>**CLASS ACTION**<br><br>**DEFENDANT FIDELITY NATIONAL HOME WARRANTY'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(B)(6)**<br><br>Date: January 10, 2019<br>Time: 10:00 am<br>Courtroom: 7B<br><br>Action filed: September 30, 2019 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2019 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7B, of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, before the Honorable Andre Birotte Jr., Defendant FIDELITY NATIONAL HOME WARRANTY ("Fidelity") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff Jonathan Loyhayem's ("Plaintiff") Complaint on grounds that Plaintiff has failed to plausibly allege claims for violation of the Telephone Consumer Protection Act ("TCPA") against Fidelity.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and the records on file herein, and on any oral argument or evidence that may be presented at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 21, 2019.

Dated: November 29, 2019      SQUIRE PATTON BOGGS (US) LLP


By: */s/Jason M. Ingber*
       Jason M. Ingber
Attorney for Defendant
FIDELITY NATIONAL HOME WARRANTY

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

DEF FIDELITY'S MOTION TO DISMISS COMPLAINT [FRCP 12(B)(6)]
*Case No. 2:19-CV-08431*

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. PLAINTIFF'S ALLEGATIONS ...........................................................................2

III. ARGUMENT .........................................................................................................3

    A. Federal Rule of Civil Procedure 12(b)(6) Standard............................3

    B. Plaintiff's Complaint Fails to Allege Facts Sufficient that Support the Use of an ATDS or an Artificial or Prerecorded Voice. ..................................................................................................4

    C. The TCPA Is An Unconstitutional, Content-Based Restriction on Speech……………………………………………………........... 5

        1. Application of the TCPA to the Alleged Conduct of Fidelity Discriminates Based on the Content of Their Speech……………….. 6

        2. The TCPA Fails Strict Scrutiny As Applied to the Calls at Issue….8

D. The TCPA is Unconstitutionally Vague As Applied to Fidelity……………..… 9

E. As Applied to Fidelity, the TCPA's Constitutional Infirmity Cannot Be Remedied Through Severance……………………………………………. 11

IV. CONCLUSION ...................................................................................................14

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................... 4, 5, 6

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................ 3, 4

*Bodie v. Lyft*
  No. 3:19-cv-02558, 2019 U.S. Dist. LEXIS 9800 (S.D. Cal. Jan. 16, 2019) .................................................................................................................. 6

*Dominguez v. Yahoo, Inc.*
  894 F.3d 116 (3d Cir. 2018) ............................................................................. 5

*Gary v. TrueBlue, Inc.*
  17-CV-10544, 2018 U.S. Dist. LEXIS 128782 (E.D. Mich. Aug. 1, 2018) .................................................................................................................. 5

*Hollis v. LVNV Funding*
  No. 18-1866, 2019 U.S. Dist. LEXIS 42246 (C.D. Cal. Jan. 2, 2019) .................................................................................................................. 6

*Kalowski v. Cty. of Sacramento*
  No. 2:16-CV-2549-AC, 2018 U.S. Dist. LEXIS 21907 (E.D. Cal. Feb. 8, 2018) ..................................................................................................... 4

*Kwan v. SanMedica Int'l*
  854 F.3d 1088 (9th Cir. 2017) ......................................................................... 4

*Marks v. Crunch San Diego, LLC*
  904 F.3d 1041 (9th Cir. 2018) ..................................................................... 5, 6

*Naiman v. Freedom Forever, LLC*
  No. 19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728 (N.D. Cal. Apr. 24, 2019) .................................................................................................. 6

*Pareto v. Fed. Deposit Ins. Corp.*
  139 F.3d 696 (9th Cir. 1998) ........................................................................... 4

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Sessions v. Barclays Bank Delaware*
   317 F. Supp. 3d 1208, 1214 (N.D. Ga. 2018) ....................................................... 5

**Federal Statutes**

47 U.S.C.
   Section 227 ................................................................................................. 3, 5, 6
   Section 227(a)(1) ............................................................................................ 5, 6

Federal Rule of Civil Procedure
   Rule 12(b)(6) ...................................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Following the Supreme Court's landmark decisions in *Iqubal* and *Twombly*, a plaintiff cannot get past the pleadings stage with threadbare and conclusory allegations parroting statutory language. But that is precisely what Plaintiff Jonathan Loyhayem's ("Plaintiff") offers here.

Plaintiff asserts a claim under the Telephone Consumer Protection Act ("TCPA"), without pleading any facts to establish that Defendant FIDELITY NATIONAL HOME WARRANTY ("Fidelity" or "Defendant") called him via an automatic telephone dialing system ("ATDS"), or with an artificial or prerecorded voice. Plaintiff asserts merely, and in a conclusory fashion, that he did not provide "prior express consent to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice." Complaint, ¶ 12. This is a classic threadbare allegation that has been rejected by numerous courts in similar TCPA actions.

Furthermore, the provision on which Plaintiff's claims rely, 47 U.S.C. 227(b)(1)(A)(iii), is unconstitutional as applied. Although the Fourth and Ninth Circuits recently remedied the facial unconstitutionality of the TCPA by severing the government-backed debt exemption,[1] the TCPA remains unconstitutional as applied to Fidelity in this case. Through its authority to prescribe regulations implementing the TCPA, the Federal Communications Commission ("FCC") has created numerous exceptions that impermissibly draw distinctions based on the content of the message conveyed. For example, although the TCPA prohibits calls to collect medical debt and service medical-related accounts, the FCC created an exception for other healthcare-related calls, texts, and messages. The statute thus contains a myriad of content-based provisions and exclusions, and as Plaintiff seeks to apply it here, it discriminates based on content of the calls allegedly placed by Fidelity, triggering

---

[1] *Am. Ass'n of Political Consultants v. FCC*, 923 F.3d 138 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 2019 U.S. App. LEXIS 17675 (9th Cir. June 13, 2019).

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

strict scrutiny under the Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). As applied to Fidelity in this case, the TCPA does not survive strict scrutiny because the TCPA is not narrowly tailored in view of its more favorable treatment of healthcare-related calls as opposed to the insurance-related calls at issue.

Moreover, as applied to Fidelity, the TCPA's definition of an ATDS is unconstitutionally vague. Here, Plaintiff brings a putative nationwide class action for calls made within the last four years utilizing an artificial prerecorded voice, or those placed with an ATDS without prior consent. At a minimum, as to absent ATDS class members who allegedly received calls prior to the Ninth Circuit's ruling in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)—which deemed the statutory ATDS definition "ambiguous on its face" and went on to redefine an ATDS—the statute failed to reasonably apprise Fidelity of what type of dialing technology would bring them within the ambit of the statute.

Accordingly, Plaintiff's Complaint must be dismissed for lack of sufficient allegations, and the TCPA must be declared unconstitutional as applied to Fidelity in this instance.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Fidelity is a marketing company. Complaint, ¶ 5. According to Plaintiff, beginning on or around November 12, 2018, "Defendant contacted Plaintiff on his cellular telephone, number ending in -0653, in an effort to sell or solicit its services." *Id.* ¶ 8. Plaintiff fails to allege the amount of times Fidelity purportedly contacted him, how he was contacted, or what technology was used to contact him.[2] *Id.* ¶ 9; *see generally* Complaint.

Plaintiff contends that he "is not a customer" of Fidelity, and never provided his cellular telephone number to Fidelity. *Id.* ¶12. Plaintiff also alleges that he "told

---

[2] Highlighting the deficient pleading in the Complaint, Plaintiff alleges, "Defendant called an average of" without any other information to complete the sentence containing the allegation. Complaint, ¶ 9.

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

1  Defendant at least once to stop contacting them (sic) and Plaintiff has been registered
2  on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant contacting
3  him." *Id.* Further, Plaintiff asserts that he did not provide "prior express consent to
4  receive calls using an automatic telephone dialing system or an artificial or
5  prerecorded voice." *Id.*

6  Notably, Plaintiff does not actually allege that Fidelity used an ATDS, or
7  artificial or prerecorded voice, to make the alleged calls he complains of. Nor does
8  Plaintiff allege any facts regarding the phone system Fidelity used to contact Plaintiff,
9  or state why Plaintiff would believe such phone system constitutes an ATDS.

10  ### III. ARGUMENT

11  #### A. Federal Rule of Civil Procedure 12(b)(6) Standard

12  To survive a motion to dismiss, Plaintiff must plead "enough facts to state a
13  claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.
14  544, 570 (2007); *see also Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir.
15  2017) (citations omitted). The court must accept well pleaded factual allegations as
16  true, but "conclusory allegations of law and unwarranted inferences are not sufficient
17  to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.,* 139 F.3d 696, 699
18  (9th Cir. 1998).

19  In addition, Plaintiff must plead "factual content that allows the court to draw
20  the reasonable inference that the defendant is liable for the misconduct alleged."
21  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed when it
22  "has not nudged [the] claims . . . across the line from conceivable to plausible." *Id.*
23  at 680 (internal quotation marks omitted). "Where a complaint pleads facts that are
24  merely consistent with a defendant's liability, it stops short of the line between
25  possibility and plausibility of entitlement to relief." *Kalowski v. Cty. of Sacramento*,
26  No. 2:16-CV-2549-AC, 2018 U.S. Dist. LEXIS 21907, at *5 (E.D. Cal. Feb. 8, 2018)
27  (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).
28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

Here, Plaintiff fails to satisfy this plausibility standard and therefore, his Complaint must be dismissed.

### B. Plaintiff's Complaint Fails to Allege Facts Sufficient That Support the Use of an ATDS or an Artificial or Prerecorded Voice

Plaintiff's Complaint lacks any factual allegations from which the Court could plausibly infer that Fidelity is liable under the TCPA for the alleged calls. The TCPA prohibits calls made without consent (unless made for an emergency purpose) using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227. Plaintiff's Complaint must be dismissed because he does not allege any facts that, if true, would show that Fidelity called him utilizing an ATDS, or artificial or prerecorded voice.

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[,] and to dial such numbers." 47 U.S.C. § 227(a)(1). Despite the clarity of the statutory definition, courts define an ATDS with irregularity. For example, the Third Circuit and several district courts define an ATDS as requiring a random or sequential number generator. *See, e.g., Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 120–21 (3d Cir. 2018); *Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208, 1214 (N.D. Ga. 2018); *Gary v. TrueBlue, Inc.*, 17-CV-10544, 2018 U.S. Dist. LEXIS 128782, at *19-20 (E.D. Mich. Aug. 1, 2018). The Ninth Circuit, taking a different approach, held that merely dialing automatically from a "stored list" of numbers, without human intervention, qualifies a system as an ATDS, reading the random and sequential number generation requirement out of the statute. *See, e.g., Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1053 (9th Cir. 2018).

Even district courts within the Ninth Circuit, which are bound to apply *Marks*, routinely dismiss TCPA claims where a plaintiff offers nothing more than a threadbare, conclusory allegation of ATDS usage. *See, e.g.*, *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 U.S. Dist. LEXIS 69728, at *5-6 (N.D. Cal. Apr. 24, 2019) (dismissing a TCPA complaint where the complaint merely

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

alleged that "Defendant used an 'automated telephone dialing system' as defined by 47 U.S.C. § 227(a)(1)" without more); *Bodie v. Lyft*, No. 3:19-cv-02558, 2019 U.S. Dist. LEXIS 9800, at *4-5 (S.D. Cal. Jan. 16, 2019) (dismissing a TCPA complaint because it "merely parrots statutory definition of an ATDS . . . . This falls short of what is required for plausibility."); *Hollis v. LVNV Funding*, No. 18-1866, 2019 U.S. Dist. LEXIS 42246, at *12 (C.D. Cal. Jan. 2, 2019) (dismissing in part, a TCPA claim because the complaint "is almost entirely devoid of specific factual allegations.").

Here, Plaintiff's Complaint must be dismissed for the same reason as the complaints in *Naima, Bodie* and *Hollis*. Plaintiff must allege at least *some* facts that plausibly show the use of an ATDS, or a prerecorded or artificial voice. Instead, he has failed to allege the use of an ATDS, or artificial or prerecorded voice, and merely offers the conclusory allegation that he did not provide "prior express consent to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice." Complaint, ¶ 12. Plaintiff's TCPA claim must therefore be dismissed, as it does not include any factual allegations that "nudge[] [his] claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

### C. The TCPA Is An Unconstitutional, Content-Based Restriction on Speech

Even if Plaintiff had plausibly pled an alleged violation of the TCPA—which he has not— Plaintiff's Complaint must be dismissed because the TCPA is unconstitutional. Without question the TCPA does not pass strict scrutiny in its present form as two Courts of Appeal—including the Ninth Circuit—have already determined. *Am. Ass'n of Political Consultants*, 923 F.3d at 168-69; *Duguid*, 2019 U.S. App. LEXIS at *18.

Although the Ninth Circuit has saved the statute over a facial attack by severing one content-specific exemption in the TCPA, the TCPA remains unconstitutional as applied to Fidelity in this case. This is so owing to the hopelessly vague ATDS formulation— that does not give Fidelity adequate advanced notice of

what speech is and is not permissible under the TCPA— and also to the myriad content-specific exemptions enacted by the FCC.

To be clear— Fidelity is not seeking to have the TCPA struck down as unconstitutional in toto. Rather, Fidelity asserts only that its own First Amendment rights would be violated if the TCPA were applied to them in the fashion contemplated by Plaintiff in this suit based on the allegations of the complaint.

### 1. Application of the TCPA to the Alleged Conduct of Fidelity Discriminates Based on the Content of Their Speech

Since the Supreme Court's landmark decision in *Reed v. Town of Gilbert*, which reversed Ninth Circuit law on content-based restrictions on speech, courts, including most recently the Fourth and Ninth Circuits, have agreed that strict scrutiny applies, because the TCPA is a content-based restriction on speech. *See*, *e.g.*, *Duguid*, 2019 U.S. App. LEXIS 17675, at *17; *Am. Ass'n of Political Consultants, Inc.*, 923 F.3d at 167; *Gallion v. Charter Communications, Inc.*, 287 F. Supp. 3d 920, 924-26 (C.D. Cal. 2018), appeal docketed No. 18-55667 (9th Cir. May 23, 2018); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017).

These court decisions all agree that the TCPA is a content-based restriction on speech, however, they understate the extent to which this is so. They focus on the fact that the TCPA exempts all calls made to collect government-backed debt— regardless of whether the caller is a government entity or a private debt collector— but applies to efforts to collect a private debt. *See Duguid*, 2019 U.S. App. LEXIS at *13-*17 (discussing the TCPA's discrimination between government-backed debt and private debt). That said, the text of the TCPA, and its implementation by the FCC contain additional content-based restrictions. And as applied here to Fidelity, the TCPA constitutes a content-based restriction on its alleged speech.

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

The TCPA delegates to the FCC the power to create additional content-based exceptions, providing that the FCC "may, by rule or order, exempt from the [call restrictions] calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." *Id.* § 227(b)(2)(C). The FCC has utilized its authority to create a myriad of content-based exemptions. For example, the FCC created an exemption for calls related to healthcare, including "appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Declaratory Ruling, 30 FCC Rcd. 7961, 8030 ¶¶ 146 (July 10, 2015) ("July 2015 FCC Order"). The FCC declined to extend the exemption to calls related to "telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content." *Id.*

The FCC created seven conditions that must be satisfied for the healthcare-related calls exemption to apply in an apparent attempt to limit the disruption to consumers caused by such calls. *Id.*, ¶ 147. However, the FCC did not analyze whether these same requirements would further the purported government interest in reducing the intrusiveness of other types of informational calls. *Id.*

Similarly, the FCC has exempted certain banking related calls and package delivery notifications subject to certain conditions, again without analyzing whether the conditions the FCC imposed would reduce the intrusiveness of other types of informational calls. July 2015 FCC Order at 8024-28 ¶¶ 127-38; *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Cargo Airline Association Petition for Expedited Declaratory Ruling*, Order, CG Docket No. 02-278, FCC 14-32, 29 FCC Rcd 3432, 3437-38 ¶¶ 18, 19 (2014).

Here, Plaintiff seeks to hold Fidelity liable for an alleged call or calls he received from Fidelity "in an effort to sell or solicit its [marketing] services."

DEF FIDELITY'S MOTION TO DISMISS
COMPLAINT [FRCP 12(B)(6)]
*Case No. 2:19-CV-08431*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Complaint, ¶¶ 5, 8. Thus, application of the TCPA to Fidelity discriminates based on the content of Fidelity's speech because had Fidelity made an exempted healthcare-related call to Plaintiff, the TCPA would not reach the alleged conduct. Accordingly, strict scrutiny is triggered.

### 2. The TCPA Fails Strict Scrutiny As Applied to the Calls at Issue

Under the First Amendment, the government "has no power to restrict expression because of its messages, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). Thus, the Supreme Court held in *Reed* "[c]ontent-based laws—those that target speech based on its communicative content—are ***presumptively unconstitutional*** and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226 (emphasis added). Further, "the differentiation between [content] . . . [must] further[] a compelling governmental interest and [be] narrowly tailored to that end." *Id.* at 2231. In other words, laws that regulate speech-based content violate the First Amendment unless they can pass an exacting form of strict scrutiny. *Id.* Here, application of the TCPA to Fidelity fails strict scrutiny.

Narrow tailoring requires targeting "no more than the exact source of the 'evil' [the regulation] seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Thus, to survive narrow tailoring analysis, the government may not restrict constitutionally protected speech unless "it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Plaintiffs in TCPA cases typically argue that the government has an interest in protecting the privacy of consumers to justify the TCPA's onerous restrictions. The Ninth Circuit seemingly accepted that argument in *Duguid*, noting the TCPA's "animating purpose" as "protecting privacy by restricting unsolicited, automated telephone calls." *Duguid*, 2019 U.S. App. LEXIS at *11, *18.

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

The TCPA would be unconstitutional as applied to Fidelity in this case, however, because there are not allegations within the Complaint demonstrating that Fidelity leveraged technology fitting the "evil" that Congress sought to target with the TCPA. Obviously not every form of technology used to make phone calls—even unsolicited marketing calls—will trigger the TCPA. Companies are entitled to make such calls, which are constitutionally protected. Yet Plaintiff has failed to allege facts demonstrating "automated" dialing or the usage of technology that threatens to disrupt consumer privacy in an enhanced or pernicious manner. As applied, therefore, the statute would plainly fail to survive strict scrutiny and must not be enforced against Fidelity in this suit.

### D. The TCPA is Unconstitutionally Vague As Applied to Fidelity

The TCPA is also unconstitutionally vague as applied to Fidelity. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Constitution requires that statutes are written with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This definiteness is required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Moreover, exacting precision is required for restrictions on free speech in order to avoid the risk of otherwise chilling constitutionally protected speech. *See NAACP v. Button*, 371 U.S. 415, 432-33 (1963) ("standards of permissible statutory vagueness are strict in the area of free expression. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."). The need for definiteness is heightened when affecting constitutionally protected rights as opposed to mere economic behavior. *Village of Hoffman Estates v. The Flipside, Hoffman Estates Inc.*, 455 U.S 489, 498 (1982) at 498; *see also Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 805 (M.D. La. 2004)

("[B]ecause the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague.").

As discussed above, the TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[,] and . . . to dial such numbers." 47 U.S.C. § 227(a)(1).

Pursuant to its rulemaking authority, the FCC issued a number of declaratory orders concerning the definition of an ATDS, culminating with its 2015 declaratory order. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015) (the "2015 Order"). In the 2015 Order, the FCC took an extremely expansive view of the definition of an ATDS and determined that the "capacity" to dial numbers randomly or sequentially "*includes . . . potential functionalities*," not just its "*present ability*." *Id.* at 7974-76 (emphasis added). Notwithstanding this broad definition, the FCC simultaneously purported to reaffirm its prior position that "the basic functions of an autodialer are to dial numbers without human intervention." *Id.* at 7975 (emphasis added).

In *ACA International v. Federal Communications Com'n*, the D.C. Circuit set aside the FCC's 2015 Order, as well as its prior 2003 and 2008 rulings related to the definition of an ATDS. In rejecting the FCC's interpretation of an ATDS, the D.C. Circuit held that it fell "short of reasoned decision making in offer[ing] no meaningful guidance to affected parties" because it chose differing, contrary interpretations or no interpretations at all as to ATDS functionality. *ACA Int'l v. FCC*, 885 F.3d 687, 701 (D.C. Cir. 2018).

The uncertainty and vagueness of the ATDS definition highlighted in *ACA International*, has not been cured. To the contrary, following *ACA International*, the Ninth Circuit in *Marks* concluded that the statutory definition of an ATDS was "ambiguous on its face" and elected to re-write the statute to include every dialer that has the capacity to call from a list of numbers "automatically." *Marks v. Crunch San*

*Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018); *see also Duguid*, 2019 U.S. App. LEXIS, at *7-*12 (reaffirming *Marks'* ATDS articulation). The term "automatically" is vague and undefined as is the term "capacity." Indeed, *Marks* specifically declined to define the term "capacity." *Id.* at 1053, n. 9.[3]

As applied to Fidelity here, the vagueness of the ATDS restriction is patently evident. Plaintiff brings a putative nationwide class action for calls made within the last four years utilizing an artificial prerecorded voice or those placed with an ATDS without prior consent. Complaint, ¶ 14. At a minimum, as to absent ATDS class members who allegedly received calls prior the Ninth Circuit's ruling in *Marks* on September 20, 2018, the statute failed to reasonably apprise the Fidelity of what type of dialing technology constitutes an ATDS and therefore what kind of conduct is prohibited. But even as to class members that received calls after the Ninth Circuit "clarified" the meaning of ATDS in *Marks,* the Complaint fails to allege that the device Fidelity used—whatever it was—to place the calls operated in accordance with the *marks* formulation. Accordingly, as applied, the TCPA is unconstitutionally vague.

### E. As Applied to Fidelity, the TCPA's Constitutional Infirmity Cannot Be Remedied Through Severance

If this Court finds the TCPA unconstitutional as applied, the infirmity cannot be remedied by severance. First, as an initial matter, in an as-applied challenge because a party only seeks to invalidate a particular application of a statute to itself, severance should not be employed to remedy the challenged unconstitutional application. Rather, in as-applied challenges courts typically deem a particular application of a statute unconstitutional leaving the remaining constitutional

---

[3] In contrast, the Third Circuit has disagreed, holding that an ATDS must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Dominguez v. Yahoo, Inc.*, 894 F. 3d 116, 121 (3d. Cir. 2018). Additionally, in district courts outside of the Third and Ninth Circuits, there are inconsistent rulings on what constitutes an ATDS.

DEF FIDELITY'S MOTION TO DISMISS
COMPLAINT [FRCP 12(B)(6)]
*Case No. 2:19-CV-08431*

applications in tact without addressing severance. *See, e.g. United States v. Grace*, 461 U.S. 171, 183 (1983) (finding statute that prohibited carrying banners in the U.S. Supreme Court building and on its grounds unconstitutional as applied to the sidewalks and surrounding buildings); *Edenfield v. Fane*, 507 U.S. 761, 761 (1993) (deeming solicitation ban on certified public accountants as applied "in the business context" unconstitutional); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, (9th Cir. 2017) (finding California statute prohibiting retailers from imposing a surcharge on customers who make payments with credit cards but permitting discounts for cash payments was unconstitutional as applied to plaintiff retailers).

Moreover, even if the Court was to consider whether severance could *cure* the unconstitutional application of the TCPA to Fidelity in this instance, severance should not be employed to that end here. In considering whether an unconstitutional provision of a statute may be severed from the remainder of the statute, courts will sever the offending provision unless it is evident that Congress would not have enacted the statute without the offending provision. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). "Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently." *Id.* (citing *Hill v. Wallace*, 259 U.S. 44, 70-72 (1922) (Future Trading Act held nonseverable because valid and invalid provisions are so intertwined that the court would have to rewrite the law to allow it to stand)). Although the inclusion of a severability provision within a statute—as in the TCPA— creates a presumption of severability, such a presumption may be overcome by "strong evidence that Congress intended otherwise." *Id.* at 686.

While the Fourth and Ninth Circuits held that the government-debt exception is severable from the remainder of the TCPA, they did not consider the extent to which the statute's delegation to the FCC to create content-based exemptions is unconstitutional. *See Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS, at

*24; *Duguid*, 2019 U.S. App. LEXIS 17675, at *22. The FCC-created exemptions are not severable from the remainder of the TCPA, as they were promulgated pursuant to the statute's delegation of rulemaking authority to the FCC, which is essential to the overall functioning of the statute. The statutory text makes it clear that Congress did not intend for the TCPA to function independently of the delegation of rulemaking authority to the FCC. *See* 47 U.S.C. § 227(b)(2) (stating that "[t]he Commission *shall* prescribe regulations to implement the requirements of this subsection."). Because the TCPA cannot function independently of its delegation of rulemaking authority to the FCC, pursuant to which the FCC created content-based exclusions have been promulgated, the offending provisions cannot be severed to remedy the constitutional infirmity of the statute as applied to Fidelity.

Furthermore, because the definition of ATDS is unconstitutionally vague, severance is not an option. *Alaska Airlines*, 480 U.S. at 684. Here, the definition of ATDS is so intertwined with the rest of the TCPA that the statute could not function if the definition of ATDS were severed. Accordingly, severance is not an option, and the TCPA must be deemed unconstitutional as applied to Fidelity. *See Georgia Ass'n of Educators v. Harris*, 749 F. Supp. 1110, 1117-18 (N.D. Ga. 1990) (Because the offending section was "inextricably woven into the whole [statute]," the court rejected severance and struck the entire statute as unconstitutional.). Indeed, invalidating the ATDS restriction is appropriate here given the myriad of content-based exemptions promulgated by the FCC. Courts do not have "editorial freedom" to "blue-pencil" a statutory or regulatory scheme. *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 509-10 (2010). Due to the sheer number of content based exemptions enacted by the FCC, severance of the exemptions in this instance would require the Court to "blue pencil" a complex statutory and regulatory scheme, which cannot be squared with the role of the judiciary. *Id.*

Finally, invalidating the application of the ATDS restriction as to Fidelity here is the only remedy that squares with the well-established principle that courts must

DEF FIDELITY'S MOTION TO DISMISS
COMPLAINT [FRCP 12(B)(6)]
*Case No. 2:19-CV-08431*

C:\Users\etroutman\Documents\FNF\Loyhayem\Loyhayem - MTD-- EJT Edits.DOCX

employ remedies that "create incentives to raise [constitutional] challenges." *Lucia v. SEC*, 138 S. Ct. 2044, 2055, n.5 (2018) (punctuation omitted). In a First Amendment case, only an elimination of the restriction on speech creates this incentive. Here, Fidelity would have little incentive to challenge the application of the ATDS restriction to their alleged conduct if the only remedy they could obtain would be the invalidation of the FCC-created exemptions. Thus, must be declared unconstitutional as applied to Fidelity here.

## IV. CONCLUSION

For the foregoing reasons, Fidelity respectfully request that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Dated: November 29, 2019

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Jason M. Ingber*
Jason M. Ingber
Attorney for Defendant
FIDELITY NATIONAL HOME WARRANTY

**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 14 -

DEF FIDELITY'S MOTION TO DISMISS COMPLAINT [FRCP 12(B)(6)]
*Case No. 2:19-CV-08431*